AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)          ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

Damian Del Angel-Loera,

Defendant.

Case No. 8:24-mj-00118-DUTY

**FILED**
CLERK, U.S. DISTRICT COURT
03/11/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of March 8, 2024 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Possession of Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Yolanda R. Galvez
*Complainant's signature*

Yolanda R. Galvez, Special Agent (DEA)
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: March 10, 2024

/s/ Michael R. Wilner
*Judge's signature*

City and state: Los Angeles, California

Hon. Michael R. Wilner, U.S. Magistrate Judge
*Printed name and title*

AUSA: Caitlin Campbell (714.338.3541)

**AFFIDAVIT**

I, Yolanda R. Galvez, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the United States Drug Enforcement Administration ("DEA") and have been so employed since November 2016. I am currently assigned to the Los Angeles Field Division, Orange County District Office. During my employment with the DEA, I have received specialized drug trafficking investigation training, including on drug interdiction, wiretaps, money laundering, smuggling, financial investigations, controlled substance identification, physical and electronic surveillance, confidential source management, and undercover operations. I have participated in numerous cases involving money laundering, drug trafficking, and the use of wire intercepts, search warrants, surveillance, and interviews of drug traffickers. I am familiar with drug-trafficking methods of operation, including the distribution, storage, and transportation of controlled substances, the collection of proceeds of drug trafficking, and methods of money laundering. I am also familiar with street terms involving controlled substances.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against and arrest warrant for Damian DEL ANGEL-LOERA ("DEL ANGEL-LOERA") for a violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A)(viii) (Possession of Methamphetamine with Intent to Distribute).

3. Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation by various law enforcement personnel and witnesses; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly. When I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or in a written report.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. All conversations and statements described in this affidavit are related in substance and in part only and all amounts are approximate.

### III. SUMMARY OF PROBABLE CAUSE

5. On March 8, 2024, DEL ANGEL-LOERA was traffic stopped in a car by the United States Border Patrol ("USBP") in San Clemente, California. DEL ANGEL-LOERA was the driver and sole occupant of the car. During the traffic stop, agents seized approximately 70 kilograms of methamphetamine from the spare

2

tire, floor and quarter panels of the car, and an additional spare tire in the cargo area of the vehicle.

### IV. STATEMENT OF PROBABLE CAUSE

6. Based upon my discussions with other federal and local law enforcement officers and review of USBP reports covering this incident, I know the following:

    a. On March 8, 2024, two USBP agents – Agents Gomes and Perry - were on patrol in a marked vehicle on the I-5 freeway, on the northbound lanes near the Basilone on-ramp in San Clemente, California.

    b. At approximately 11:55 a.m., Agents Gomes and Perry observed a gray 2011 Nissan Rogue (the "Nissan") bearing California license plate 9GIS275. Based on Department of Homeland Security records checks, the agents were aware that the Nissan had crossed into the United States via the San Ysidro Port of Entry about six hours earlier, at approximately 6:00 a.m. This was unusual, as it takes approximately two hours to commute from the port of entry to Orange County, where Agents Gomes and Perry were patrolling. Agents Gomes and Perry also ran records checks on the Nissan. Those records checks showed that three "alerts"[1] had been placed on the Nissan in February 2024 flagging the Nissan as being a high-risk vehicle for narcotics and human smuggling.

    c. Agents Gomes and Perry then followed the Nissan in their marked USBP car. They followed the Nissan for

---

[1] Alerts are information provided by law enforcement indices.

approximately 7 miles. While following the Nissan, Agents Gomes and Perry observed various forms of suspicious driving behavior. For example, when the USBP car pulled behind the Nissan, agents observed the Nissan immediately change lanes, cutting off a car and almost causing an accident. Further, when the marked USBP car pulled next to the Nissan on the Nissan's driver side, Agents Gomes and Perry observed that the driver (later identified as DEL ANGEL-LOERA) would not look in the direction of the marked USBP car and was constantly checking the rearview and passenger side mirrors. Agents Gomes and Perry also noticed that, at one point, DEL ANGEL-LOERA was looking into the rearview mirror so frequently that the Nissan started drifting lanes. As a final example, Agents Gomes and Perry observed that the Nissan was changing speeds sporadically between 70 miles per hour and 85 miles per hour. Based on the agents' training and experience, they recognized this and other behavior exhibited by DEL ANGEL-LOERA as being indicative of smuggling behavior.

       d.    Based on DEL ANGEL-LOERA's suspicious driving behavior, in addition to the alerts placed on the Nissan for high risk of narcotics and human smuggling, Agents Gomes and Perry initiated a traffic stop of the Nissan.

       e.    During the traffic stop, DEL ANGEL-LOERA told USBP Agents Gomes and Perry that he was going to Los Angeles to drop off his work tools. When pressed about where in Los Angeles he was going, DEL ANGEL-LOERA said he was going to Monrovia. When asked if he knew the address of where he was going, DEL ANGEL-LOERA handed agents a Border Crossing Card

4

("BCC"). When asked to confirm his name, DEL ANGEL-LOERA confirmed that the name on the BCC was his name. Agents Gomes and Perry conducted additional records checks on the BCC that DEL ANGEL-LOERA presented, but Agents Gomes and Perry were unable to find any information confirming that the BCC card was legitimate. Agents Gomes and Perry then concluded that the BCC was likely fraudulent. When asked again to confirm his name, DEL ANGEL-LOERA repeated the name on the BCC. But when asked his date of birth, DEL ANGEL-LOERA gave a different birth year than what was listed on the BCC. (The BCC listed March 11, 1984 and DEL ANGEL-LOERA said his birthdate was March 11, 1986.) When asked about his birth date again, DEL ANGEL-LOERA again said he was born in 1986. However, after being shown the BCC, DEL ANGEL-LOERA said he was born in 1984.

        f.    When agents asked for consent to search the vehicle, DEL ANGEL-LOERA granted consent, stating he did not have any illegal contraband in the car. DEL ANGEL-LOERA also consented to a K-9 sniff of the vehicle. Prior to the K-9 sniff, agents observed a large spare tire that did not match the Nissan in the rear cargo compartment and a large lunch box in the backseat containing power tools.

        g.    At this time, USBP Agent Gomes deployed his K-9 partner "Mya," who was already with him in the marked USBP car, to conduct a canine sniff of the vehicle. K-9 Mya alerted to the underside of the Nissan on the passenger side. USBP Agents Gomes and Perry then searched the Nissan. As they began to search the Nissan, USBP Agent Gomes lifted the spare tire seen

5

in the cargo department of the Nissan vertically.  As the tire moved upright, USBP Agent Gomes could feel objects moving inside the tire.

      h.   A subsequent search of the vehicle revealed 30 vacuum sealed packages containing a crystalline substance that appeared to be methamphetamine in the spare tire located in the cargo area of the Nissan.  96 additional packages were found concealed in the floor and quarter panels of the Nissan, and 14 more packages were found concealed in a second spare tire.  A total of 140 packages were discovered in the vehicle.  A picture of the methamphetamine that was seized is included below.



      7.   DEL ANGEL-LOERA was then arrested and transported to the San Clemente Border Patrol checkpoint without incident.  I, along with DEA SA Joiner, went to the checkpoint to interview DEL ANGEL-LOERA.  I read DEL ANGEL-LOERA his Miranda rights.  DEL ANGEL-LOERA acknowledged that he understood those rights and then agreed (both verbally and in writing) to answer questions.  DEL ANGEL-LOERA also gave verbal and written consent to search the two cellular phones found on him and in the Nissan when he was arrested.  At the request DEL ANGEL-LOERA, the interview was conducted in the Spanish language.

8. During the interview, DEL ANGEL-LOERA told SA Joiner and me that he did not have a criminal history. He stated that he did purchase a fraudulent travel document in Tijuana, Baja California, Mexico and entered the United States around October or November 2023. DEL ANGEL-LOERA explained that he had agreed to do a favor for an acquaintance he knew as "Pinky" or "Puma" in exchange for some unspecified amount of money. DEL ANGEL-LOERA further explained that he had agreed to travel from Los Angeles, California to Chula Vista, California to pick up a car that contained power tools and drive that car back to Los Angles. He stated that he picked up the car between 9:00 a.m. and 10:00 a.m. that day (March 8, 2024) and that, once he got to the area where the car was, an unknown male approached him and asked if he was the one picking up the car. The unknown male told him that his payment was inside a wallet in the vehicle. DEL ANGEL-LOERA stated he was paid $2,500 and, upon taking possession of the vehicle, he noticed a tire in the cargo area and a bag containing power tools. DEL ANGEL-LOERA stated he began to feel uneasy about the situation due to the amount he was being paid to transport the power tools. However, he said that, because he needed the money, he continued to drive the car as planned. DEL ANGEL-LOERA stated he did not communicate with the unknown male via telephone. Also, a cursory review of DEL ANGEL-LOERA's phone during the interview did not show communication with any contacts saved as "Pinky" or "Puma."

9. Throughout the interview, although DEL ANGEL-LOERA appeared to offer some information, the interviewing agents

believed he was concealing a significant amount of useful information and continuing to evade direct questions. The interview was concluded and he was transported to Santa Ana Jail for further proceedings.

10. In total, DEL ANGEL-LOERA was transporting 140 packages, weighing approximately 70 kilograms. At the San Clemente Border Patrol Station, the crystalline substance was weighed and tested using a Tru Narc handheld narcotics analyzer. The packages tested positive for methamphetamine.

## CONCLUSION

11. For all the reasons described above, there is probable cause to believe that DEL ANGEL-LOERA violated 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Possession of Methamphetamine with Intent to Distribute).

                                            /s/ Yolanda R. Galvez
                                      YOLANDA R. GALVEZ, Special Agent,
                                      Drug Enforcement Administration

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 10th day of
March 2024

/s/ Michael R. Wilner
HONORABLE MICHAEL R. WILNER
UNITED STATES MAGISTRATE JUDGE